## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Sheila Knox Hill, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | |
| | ) | |
| Equifax Information Services, LLC; | ) | |
| Trans Union, LLC; and DiTech | ) | **COMPLAINT** |
| Financial, LLC, | ) | **WITH JURY TRIAL DEMAND** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PRELIMINARY STATEMENT

This action for damages is based on Defendants' false reporting on Plaintiff's credit file and/or consumer reports, failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff, and failures to conduct reasonable reinvestigations with respect to such information.

## PARTIES

1.  Plaintiff, Sheila Knox Hill, is a natural person who resides in Henry County, Georgia.

2.  Plaintiff is an individual and is, therefore, a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

1

3.     Defendant, Equifax Information Services, LLC (hereinafter "Equifax"), is a limited liability corporation formed under the laws of the State of Georgia. Equifax may be served with process via its registered agent, Shawn Baldwin, at 1550 Peachtree Street NE, Suite H46, Atlanta, Georgia 30309-2402.

4.     Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Accordingly, Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

5.     Defendant, Trans Union, LLC (hereinafter "TransUnion"), is a limited liability corporation formed under the laws of the State of Delaware, headquartered in the State of Illinois, and registered to do business in the State of Georgia. TransUnion may be served with process via its registered agent, Prentice-Hall Corporation System, at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092-2924.

6.     TransUnion regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Accordingly, TransUnion is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

7.     Defendant, DiTech Financial, LLC (hereinafter "DiTech"), is a limited liability corporation formed under the laws of the State of Delaware, headquartered in the State of Florida, and registered to do business in the State of Georgia. DiTech may be served with process via its registered agent, C T Corporation System, at 289 South Culver Street, Lawrenceville, Georgia 30046-4805.

8.     DiTech regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions, such as Plaintiff's transactions at issue in this lawsuit and described herein, and is, therefore, a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

## JURISDICTION AND VENUE

9.     This Court has federal question jurisdiction over Plaintiff's Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., claims, pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

10.    This Court has personal jurisdiction over Defendants, pursuant to O.C.G.A. § 9-10-91(1), because, *inter alia*, Defendants frequently and routinely conduct business in the State of Georgia, including the conduct complained of herein.

3

11.    Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district. Pursuant to LR 3.1B(3), NDGa, venue is proper in the Atlanta Division because one or more Defendants maintain agents for service of process within the Atlanta Division.

<u>**Factual Allegations Derived from Plaintiff's Mortgage**</u>

12.    On or about October 30, 2007, Plaintiff obtained a loan from Bank of America, N.A. (hereinafter "Bank of America") for the original principal amount of $243,550.00 (the "Mortgage").

13.    The Mortgage is collateralized by residential real property located at 136 Windward Hills, McDonough, Georgia 30253-5991, as evidenced by the Security Deed recorded at Deed Book 10615, Page 293, in the Superior Court of Henry County.

14.    On or about December 30, 2011, the Mortgage was transferred from Bank of America to Green Tree Servicing, LLC (hereinafter "Green Tree"), as evidenced by the Assignment recorded at Deed Book 12373, Page 165, in the Superior Court of Henry County.

15.   On or about August 31, 2015, Green Tree merged with DiTech, and DiTech took over servicing of all Green Tree accounts, including the Mortgage at issue in this lawsuit.

### Factual Allegations Derived from Plaintiff's Bankruptcy Case

16.   On September 6, 2011, Plaintiff filed a Chapter 13 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case Number 11-76031 (the "Bankruptcy Case").

17.   In Schedule D of her Bankruptcy Petition, Plaintiff listed DiTech as having a secured claim for the Mortgage in the amount of Bank of America.

18.   On January 27, 2012, the Bankruptcy Court received and filed a Notice of Transfer, assigning the Mortgage from Bank of America to Green Tree.

19.   On April 24, 2012, Plaintiff filed her Chapter 13 Plan in accordance with 11 U.S.C. § 1322(b)(5), providing for the cure of any then-deficiency and the direct payment of all future Mortgage payments by Plaintiff to Green Tree.

20.   On June 25, 2012, Plaintiff's Plan was confirmed and became *res judicata* as to Plaintiff and Green Tree.

5

21.    Green Tree was served with a copy of the Confirmation Order on June 27, 2012, by the Bankruptcy Noticing Center.

22.    On October 8, 2013, Green Tree filed a Proof of Claim in Plaintiff's Bankruptcy Case, Claim 5, representing it was owed $238635.37, inclusive of $10,523.35 in arrearages.

23.    On October 29, 2016, the Bankruptcy Court received and filed a Notice of Transfer, assigning the Mortgage from Green Tree to DiTech.

24.    On February 3, 2017, the Bankruptcy Court issued an Order of Discharge in favor of Plaintiff. The Bankruptcy Court order specifically excluded from discharge, however, any debt provided for under 11 U.S.C. § 1322(b)(5), such as Plaintiff's Mortgage. The applicable language of the Order is set forth below:

**Most debts are discharged**
Most debts are covered by the discharge, but not all.
Generally, a discharge removes the debtors' personal
liability for debts provided for by the chapter 13 plan.

In a case involving community property: Special rules
protect certain community property owned by the debtor's
spouse, even if that spouse did not file a bankruptcy case.

**Some debts are not discharged**
Examples of debts that are not discharged are:

♦ debts provided for under 11 U.S.C. §
  1322(b)(5) and on which the last payment or
  other transfer is due after the date on which
  the final payment under the plan was due;

25.    The Mortgage owed to DiTech has not been discharged and is not

subject to discharge under 11 U.S.C. § 1328(a)(1). See, *In re Duke*, 447 B.R. 365

(Bankr. M.D. Ga. 2011).

26.    As recently as October 29, 2016, DiTech advised the Bankruptcy Court

and Plaintiff that Plaintiff's Mortgage was being serviced by DiTech and that

Plaintiff's obligation is ongoing.

27.    Accordingly, Plaintiff has continued to make, and DiTech has

continued to service and accept, Plaintiff's Mortgage payments post-discharge.

**Factual Allegations Pertinent to All Defendants**

28.    The reporting of consumer credit information by credit reporting

agencies ("CRAs") and data furnishers is the foundation of credit risk scoring and

impacts the financial lives of consumers in innumerable ways, including the

availability and cost of credit, housing opportunities, leasing prospects, insurance

availability and cost, utility service, and even employment. Between two and three

7

million consumer reports are issued by credit bureaus each day. See, *http://www.cdiaonline.org/about.cfm*.

29.     The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

30.     Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

31.     To further assist CRAs and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to CRAs and data furnishers.

32.    The CDIA's extensive training and support offerings include FCRA certification programs for both CRAs and data furnishers to assist each in maintaining compliance with FCRA regulations.

33.    Because standardized methods are of paramount importance to the accurate, complete and timely reporting of consumer credit data, the CDIA can and will revoke FCRA certification for failure to adhere to the standards set by the CDIA.

34.    In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year.

See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515*

35.    The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA.  Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards. *Id.*

36.    The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

9

37.    It is axiomatic that in the world of consumer credit information reporting, as long as a consumer credit account is open, every month some piece of information regarding that account/consumer is going to change. For example, interest continues to accrue, payments are made, etc.

38.    15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of information concerning the individual about whom a report relates. Further, 15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to regularly correct and update the information they previously provided to consumer reporting agencies to make sure the information is complete and accurate.

39.    Accordingly, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard for reporting consumer accounts that "will ensure the integrity and consistency of the credit information being reported." As part of that industry standard the Metro 2 Format Task Force has declared, "All accounts must be reported on a monthly basis." (Emphasis added.) *Id.*

40.    Because consumer credit information changes monthly, failure to update that information on a monthly basis, yet still publishing reports containing

10

the previously reported information without updates, means that the information being reported is almost certainly incomplete and inaccurate.

41.    The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 standards.

42.    The failure to adhere to CDIA guidelines and the Metro 2 reporting standards can adversely affect a consumer's FICO score.

43.    At all times relevant hereto, Equifax has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

44.    At all times relevant hereto, TransUnion has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

45.    At all times relevant hereto DiTech warranted and or represented to Equifax and TransUnion that it had adopted and implemented the Metro 2 format

for its reporting of consumer data and would otherwise comply with Metro 2 and CDIA guidelines in its reporting of consumer information.

46.     DiTech has, at all times relevant hereto, incorporated the Metro 2 format for reporting consumer information into its own internal policies and procedures.

47.     Defendants have actual knowledge that entities that perform credit risk scoring, and other functions utilizing the data reported by Defendants, assume Defendants' compliance with Metro 2 standards in reporting consumer information.

48.     The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards increases the probability of a reported item being false or materially misleading to users of consumer reports, as those users assume that the information in the consumer reports is being reported in compliance with Metro 2 standards, and thus interpret that information accordingly.

49.     As a result, failure to adhere accepted Metro 2 standards in reporting information in consumer reports adversely affects consumers, as it causes inconsistent, misleading, and/or incorrect interpretation of information regarding consumers.

50.     The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards can itself support a finding of willful violation as described by 15 U.S.C. § 1681n when that failure results in a report that is false, incomplete, and misleading.

51.     Further, the failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a). See, *Gillespie v. Equifax Info. Servs., LLC*, No. 05C138, 2008 WL 4316950, at *8 (N.D. Ill. Sept. 15, 2008).

52.     As an integral aspect of its duties under the FCRA, Equifax is required to have in place adequate and reasonable policies and procedures to assure the maximum possible accuracy of information concerning individuals about whom Equifax produces reports; the requirement to maintain reasonable procedures extends to Equifax's handling and reinvestigation of disputed information. At all times relevant hereto, Equifax adopted and implemented the CDIA guidelines and Metro 2 format as a means of fulfilling its aforementioned duties under the FCRA.

13

53.    As an integral aspect of its duties under the FCRA, TransUnion is required to have in place adequate and reasonable policies and procedures to assure the maximum possible accuracy of information concerning individuals about whom TransUnion produces reports; the requirement to maintain reasonable procedures extends to TransUnion's handling and reinvestigation of disputed information. At all times relevant hereto, TransUnion adopted and implemented the CDIA guidelines and Metro 2 format as a means of fulfilling its aforementioned duties under the FCRA.

54.    As an integral aspect of its duties under the FCRA, DiTech is required to have in place adequate and reasonable policies and procedures for handling an investigation of disputed information. At all times relevant hereto, DiTech adopted and implemented the CDIA guidelines and Metro 2 format as a means of fulfilling its aforementioned duties under the FCRA.

55.    Equifax and TransUnion, in conjunction with the other major credit reporting agencies, developed a browser-based software system that allows credit reporting agencies to electronically notify furnishers of disputed credit reporting and for furnishers to respond to such disputes following investigation. The system is

commonly referred to as e-OSCAR and was designed to be Metro 2 compliant. See,

*http://www.e-oscar.org/*

56.     In order for information in consumer files and on consumer reports to

be reported consistently and correctly, and with maximum possible accuracy, users

of the e-Oscar system must comply with accepted Metro 2 standards. Otherwise, the

information contained in the resulting consumer reports is not consistent or uniform

and is subject to gross misinterpretation by users of consumer reports.

### Factual Allegations Derived from Reporting to and by Equifax

57.     On or about February 20, 2017, Plaintiff obtained a copy of her

consumer report as published by Equifax.

58.     That report contained erroneous information as provided by DiTech

and as published and reported by Equifax.

59.     Specifically, the report showed the Mortgage as having a $0 balance,

and the tradeline included language that, when read in conjunction with the false $0

balance, gave the false and misleading impression that the Mortgage was discharged

in bankruptcy.

60.     The relevant portion of the DiTech tradeline appeared in the February

20, 2017, Equifax report as follows:

| High Credit | | Owner | INDIVIDUAL |
|---|---|---|---|
| Credit Limit | | Account Type | MORTGAGE |
| Terms Frequency | UNKNOWN | Term Duration | 0 |
| Balance | $0 | Date Opened | Oct 30, 2007 |
| Amount Past Due | $0 | Date Reported | Sep 06, 2011 |
| Actual Payment Amount | | Date of Last Payment | Sep 01, 2011 |
| Date of Last Activity | | Scheduled Payment Amount | |
| Months Reviewed | 47 | Delinquency First Reported | Sep 01, 2011 |
| Activity Designator | | Creditor Classification | UNKNOWN |
| Deferred Payment Start Date | | Charge Off Amount | |
| Balloon Payment Date | | Balloon Payment Amount | |
| Loan Type | Conventional Real Estate Mortgage | Date Closed | |
| Date of First Delinquency | May 01, 2011 | | |

**Comments**

Bankruptcy chapter 13
Fannie mae account
Fixed rate
Bankruptcy completed

**Contact**

DITECH FINANCIAL LLC
PO Box 6172
Rapid City, SD????57709-6172
1-855-812-1402

(Remaining portion of tradeline omitted.)

61.     Because the balance of the Mortgage is not $0, the Mortgage was not

discharged in bankruptcy, and Plaintiff continues to make payments to DiTech, the

information described above was both false and misleading.

16

62.    Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Defendants. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

63.    In a letter dated March 2, 2017, Plaintiff disputed the inaccurate and misleading information directly to Equifax and advised Equifax that the Mortgage was included in her Bankruptcy Case but was not discharged and is reporting incorrectly as to the current status, payment history, and balance. The relevant portion of Plaintiff's dispute is reproduced below:

> On February 20, 2017, your company provided me with my consumer credit report. I have identified an item which is being reported incorrectly and that is harming my credit rating. DiTech Financial, LLC, P.O. Box 6172, Rapid City, South Dakota 57709-6172, account number XXXXXXXX2201, is reporting incorrectly as to the current status, payment history and balance. It is included in my bankruptcy case but not discharged and I am making payments as scheduled. I am including a notice from the bankruptcy court for your review. Please correct this entry as soon as possible.

64.    In support of Plaintiff's dispute and to assist Equifax and DiTech's respective investigations, Plaintiff included with her dispute a copy of the Notice of Final Cure Payment filed in Plaintiff's Bankruptcy Case.

65.    Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify DiTech of Plaintiff's dispute within five business days of receiving the dispute, to forward the

17

attached documents for DiTech's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

66.    Upon information and belief, Equifax failed to notify DiTech and to provide the supporting documents, as required by 15 U.S.C. § 1681i.

67.    Three months passed, and Plaintiff did not receive a response from Equifax.

68.    Accordingly, in a letter dated March 2, 2017, Plaintiff disputed the inaccurate and misleading information directly to Equifax for a second time, and again advised Equifax that the Mortgage was included in her Bankruptcy Case but that it was not discharged and is reporting incorrectly as to the current status, payment history, and balance.

69.    In support of Plaintiff's second dispute and to assist Equifax and DiTech's respective investigations, Plaintiff included with her dispute a copy of the following documents: Plaintiff's confirmed Bankruptcy Plan; the Discharge Order; and, a recent payoff statement from DiTech.

18

70.     Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify DiTech of Plaintiff's dispute within five business days of receiving the dispute, to forward the attached documents for DiTech's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

71.     Upon information and belief, Equifax timely notified DiTech of Plaintiff's dispute, via e-OSCAR or otherwise, and provided the supporting documents, as required by 15 U.S.C. § 1681i.

72.     Alternatively, Equifax failed to notify DiTech and to provide the supporting documents, as required by 15 U.S.C. § 1681i.

73.     Pursuant to 15 U.S.C. § 1681s-2, DiTech had a duty to conduct an investigation with respect to the disputed information and to modify or delete that information appropriately.

74.     In a document dated July 19, 2017, Equifax advised Plaintiff that it had researched the dispute, and provided a "revised report" that reflected its findings. Equifax provided a copy of the tradeline as reported "post-investigation", which reproduced the errors identified by Plaintiff in her original dispute letter.

19

75.     Specifically, the DiTech tradeline appeared in the revised July 19, 2017, Equifax report as follows:

| Ditech Financial LLC | PO Box 6172 Rapid City SD 57709-6172 : (855) 812-1402 | | | | | | Months Revd | Activity Designator | | | Creditor Classification | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | | 47 | | | | | |
| 511003528* | 10/30/2007 | | | | | | | | | | | |
| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
| 09/06/2011 | $0 | $0 | 09/2011 | | | 05/2011 | | 09/2011 | | | | |
| Status - Included In Wage Earner Plan; Type of Loan - Conventional Re Mortgage; Whose Account - Individual Account;   ADDITIONAL INFORMATION - Bankruptcy Chapter 13; Fixed Rate; Consumer Disputes - Reinvestigation in Process; | | | | | | | | | | | | |

76.     The post-investigation reporting of Equifax and DiTech is, independently and jointly, false and misleading.

77.     The post-investigation reporting of Equifax and DiTech is, independently and jointly, in derogation of the Metro 2 reporting standards, and that departure and failure to adhere to the adopted guidelines renders the reporting both false and materially misleading, as users of consumer reports assume Equifax and DiTech's compliance with Metro 2 standards in reporting consumer information.

**Factual Allegations Derived from Reporting to and by TransUnion**

78.     On or about February 20, 2017, Plaintiff obtained a copy of her consumer report as published by TransUnion.

79.     That report contained erroneous information as provided by DiTech and as published and reported by TransUnion.

20

80.     Specifically, the report showed the Mortgage as having a $0 balance, and the tradeline included verbiage that, when read in conjunction with the false $0 balance, gave the false and misleading impression that the Mortgage was discharged in bamnkruptcy.

81.     The relevant portion of the DiTech tradeline appeared in the February 20, 2017, TransUnion report as follows:

**DITECH FINANCIAL LLC  #511003528****
POB 6172
RAPID CITY, SD 57709
(800) 643-0202

| Date Opened: | 10/30/2007 | Balance: | $0 | Pay Status: | >Account Included in |
| Responsibility: | Individual Account | Date Updated: | 12/31/2016 | | Bankruptcy< |
| Account Type: | Mortgage Account | Last Payment Made: | 12/26/2016 | Terms: | $1,842 per month, paid |
| Loan Type: | CONVENTIONAL | High Balance: | $243,550 | | Monthly for 360 months |
| | REAL ESTATE | | | Date Closed: | 01/31/2012 |
| | MTG | | | | |

82.     Because the balance of the Mortgage is not $0, the Mortgage was not discharged in bankruptcy, and Plaintiff continues to make payments to DiTech, the information described above was both false and misleading.

83.     Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Defendants. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

21

84.     In a letter dated March 2, 2017, Plaintiff disputed the inaccurate and misleading information directly to TransUnion and advised TransUnion that the Mortgage was included in her Bankruptcy Case but was not discharged and is reporting incorrectly as to the current status, payment history, and balance. The relevant portion of Plaintiff's dispute is reproduced below:

> On February 20, 2017, your company provided me with my consumer credit report. I have identified an item which is being reported incorrectly and that is harming my credit rating. DiTech Financial, LLC, P.O. Box 6172, Rapid City, South Dakota 57709, account number 511003528XXXX, is reporting incorrectly as to the current status, payment history and balance. It is included in my bankruptcy case but not discharged and I am making payments as scheduled. Please correct this entry as soon as possible.

85.     Pursuant to 15 U.S.C. § 1681i, TransUnion had a duty to notify DiTech of Plaintiff's dispute within five business days of receiving the dispute, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

86.     Upon information and belief, TransUnion timely notified DiTech of Plaintiff's dispute, via e-OSCAR or otherwise, as required by 15 U.S.C. § 1681i.

87.     Alternatively, TransUnion failed to notify DiTech, as required by 15 U.S.C. § 1681i.

88.    Pursuant to 15 U.S.C. § 1681s-2, DiTech had a duty to conduct an investigation with respect to the disputed information and to modify or delete that information appropriately.

89.    In a document dated March 7, 2017, TransUnion advised Plaintiff that it had researched the dispute, and provided a "revised report" that reflected its findings. TransUnion provided a copy of the tradeline as reported "post-investigation", which reproduced the errors identified by Plaintiff in her original dispute letter.

90.    Specifically, the DiTech tradeline appeared in the revised March 7, 2017, TransUnion report as follows:

DITECH FINANCIAL LLC #511003528**** ( POB 6172, RAPID CITY, SD 57709, (800) 643-0202 )

| | | | | | |
|---|---|---|---|---|---|
| Date Opened: | 10/30/2007 | Balance: | $0 | Pay Status: | ›Account Included in Bankruptcy‹ |
| Responsibility: | Individual Account | Date Updated: | 01/31/2012 | Terms: | $1,842 per month, paid Monthly for |
| Account Type: | Mortgage Account | High Balance: | $243,550 | | 360 months |
| Loan Type: | CONVENTIONAL REAL ESTATE MTG | | | Date Closed: 01/31/2012 | |
| Mortgage Info: Fannie Mae Acct #1705537996 | | | | | |
| Remarks: ›CHAPTER 13 BANKRUPTCY‹ | | | | | |

91.    The post-investigation reporting of TransUnion and DiTech is, independently and jointly, false and misleading.

92.    The post-investigation reporting of TransUnion and DiTech is, independently and jointly, in derogation of the Metro 2 reporting standards, and that departure and failure to adhere to the adopted guidelines renders the reporting both

false and materially misleading, as users of consumer reports assume TransUnion and DiTech's compliance with Metro 2 standards in reporting consumer information.

93.     There is no indication in the tradeline of the "verified" report that Plaintiff has disputed the information reported and published by TransUnion and DiTech. The failure to note the legitimate dispute by Plaintiff of the relevant tradeline renders the reporting materially misleading.

94.     In a letter dated June 14, 2017, Plaintiff again disputed the inaccurate and misleading information directly to TransUnion and advised TransUnion that the Mortgage was included in her Bankruptcy Case but was not discharged and is reporting incorrectly as to the current status, payment history, and balance. The relevant portion of Plaintiff's second dispute is reproduced below:

Please review the following incorrect item and make the appropriate corrections and then send me a copy of the corrected consumer credit report. Ditech Financial LLC, POB 6172, Rapid City, South Dakota 57709, Acct. No.: 511003528***. This mortgage account is reporting incorrectly as to the current status, payment history and balance. The account was included in my Bankruptcy case described above. But the account was not discharged. The balance is not $0 and I continue to make payments per the terms of the account. It is a long-term debt, as the account indicates, and falls under § 1322(b)(5) of the bankruptcy code. I have included my confirmed plan listing this account in the mortgages section, a copy of my payoff statement, and a copy of the Bankruptcy Court Discharge Order, highlighted, so that so that you can verify its exception from Discharge. Please forward these documents to the furnisher, confirm my balance and payments and correct this report.

24

95.   In support of Plaintiff's second dispute and to assist TransUnion and DiTech's respective investigations, Plaintiff included with her dispute the following documents: a copy of Plaintiff's Confirmed Chapter 13 Plan, showing the Mortgage as long-term debt and thus exempt from discharge under 11 U.S.C. § 1328(a)(1); a copy of the discharge order exempting debts such as that held by DiTech from discharge; and a recent payoff statement showing the continuation of Plaintiff's obligation.

96.   Pursuant to 15 U.S.C. § 1681i, TransUnion had a duty to notify DiTech of Plaintiff's second dispute within five business days of receiving the dispute, to forward the attached documents for DiTech's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

97.   Upon information and belief, TransUnion timely notified DiTech of Plaintiff's second dispute, via e-OSCAR or otherwise, and provided the supporting documents, as required by 15 U.S.C. § 1681i.

98.   Alternatively, TransUnion failed to notify DiTech and to provide the supporting documents, as required by 15 U.S.C. § 1681i.

99.   Pursuant to 15 U.S.C. § 1681s-2, DiTech had a duty to conduct an investigation with respect to the disputed information and to modify or delete that information appropriately.

100.   In a document dated July 17, 2017, TransUnion advised Plaintiff that it had researched the second dispute, and provided a "revised report" that reflected its findings. TransUnion provided a copy of the tradeline as reported "post-investigation", which reproduced the errors identified by Plaintiff in her original dispute letter and second dispute letter.

101.   Specifically, the DiTech tradeline appeared in the revised July 17, 2017, TransUnion report as follows:

| DITECH FINANCIAL LLC #511003528**** (POB 6172, RAPID CITY, SD 57709, (800) 643-0202) | | | |
|---|---|---|---|
| Date Opened: | 10/30/2007 | Balance: | $0 |
| Responsibility: | Individual Account | Date Updated: | 01/31/2012 |
| Account Type: | Mortgage Account | High Balance: | $243,550 |
| Loan Type: | CONVENTIONAL REAL ESTATE MTG | | |
| Mortgage Info: Fannie Mae Acct #1705537996 | | | |
| Remarks: ›CHAPTER 13 BANKRUPTCY‹ | | | |

Pay Status: ›Account Included in Bankruptcy‹
Terms: $1,842 per month, paid Monthly for 360 months
Date Closed: 01/31/2012

102.   The post-investigation reporting of TransUnion and DiTech is, independently and jointly, false and misleading.

103.   The post-investigation reporting of TransUnion and DiTech is, independently and jointly, in derogation of the Metro 2 reporting standards, and that departure and failure to adhere to the adopted guidelines renders the reporting both

false and materially misleading, as users of consumer reports assume TransUnion and DiTech's compliance with Metro 2 standards in reporting consumer information.

104.   There is no indication in the tradeline of the "verified" report that Plaintiff has disputed the information reported and published by TransUnion and DiTech. The failure to note the legitimate dispute by Plaintiff of the relevant tradeline renders the reporting materially misleading.

## Damages

105.   The reporting of Defendants, independently and jointly, breached their respective duties as described herein.

106.   Defendants had actual notice that the information they were reporting regarding Plaintiff and the Mortgage was false, deceptive, and misleading.

107.   Defendants failed to correct their false, deceptive, and misleading reporting as described herein.

108.   Defendants continued to report the false, deceptive, and misleading information regarding Plaintiff and the Mortgage.

109.   Accordingly, Defendants' conduct was willful.

27

110.   Upon information and belief, Defendants have published the false and misleading information regarding Plaintiff to third parties.

111.   As a result of Defendants' willful actions and omissions, Plaintiff is eligible for statutory damages.

112.   Additionally, as a result of Defendants' actions and omissions, Plaintiff has suffered actual damages, including out-of-pocket expenses in challenging Defendants' wrongful representations regarding the Mortgage.

113.   Realizing that Defendants have, in effect, deprived Plaintiff of an extended period of positive credit reporting on the most important account Plaintiff has, and that Defendants continue to do so as a result of their respective failures to comply with the statutory requirements of 15 U.S.C. § 1681 et seq., Plaintiff has experienced severe worry, frustration, anxiety, and stress.

114.   As a result of the actions and omissions of Defendants, Plaintiff's actual damages also include the illegitimate suppression of Plaintiff's apparent creditworthiness.

115.   Defendants' failures to correct and clear the inaccuracies in Plaintiff's Equifax and TransUnion reports creates a material risk of financial harm to Plaintiff stemming from the decreased perception of Plaintiff's creditworthiness.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §§ 1681e(b) and 1681i – Equifax Information Services, LLC

116.   Plaintiff incorporates by reference the preceding paragraphs 1 as though fully stated herein.

117.   Pursuant to 15 U.S.C. § 1681e(b), Equifax is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

118.   Equifax's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

119.   Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Equifax had an affirmative duty to independently investigate the dispute submitted by Plaintiff.

120. Pursuant to 15 U.S.C. § 1681i(a)(2), Equifax was required to communicate the specifics of Plaintiff's dispute to DiTech, including the forwarding of any documents provided by Plaintiff in support of that dispute.

121. A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

122. In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Equifax was required to review and consider all relevant information submitted by Plaintiff.

123. Plaintiff's dispute was clear and unambiguous as to the inaccuracies of Equifax's reporting.

124. Plaintiff provided all the relevant information necessary for Equifax to reinvestigate and correct the inaccuracies in its reporting.

125. Equifax breached its duties as described herein.

126. If Equifax had conducted a reasonable reinvestigation of Plaintiff's dispute, Equifax would have reviewed and considered all of the information Plaintiff

30

submitted in her dispute letter and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

127.   If Equifax had conducted a reasonable reinvestigation of Plaintiff's dispute, the tradeline on Plaintiff's Equifax consumer report would have been appropriately corrected.

128.   Due to Equifax's failures to follow reasonable procedures to assure maximum possible accuracy of information and failures to conduct a reasonable reinvestigation of Plaintiff's dispute, the false and misleading information in Plaintiff's credit file and on Plaintiff's Equifax report was not appropriately modified.

129.   Equifax had all the information necessary to correct its reporting. Yet, Equifax failed to correct the information in the face of clear evidence that its reporting was false and misleading. The failure indicates that Equifax's review procedures were not reasonable.

130.   The fact that Equifax had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Equifax recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

31

131.   Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Plaintiff in her consumer reports, in reckless disregard of the statutory requirements, Plaintiff's dispute, and the publicly recorded Bankruptcy Case filings.

132.   Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Plaintiff's dispute, and by failing thereafter to appropriately modify information in her file and on her consumer report in reckless disregard of the statutory requirements, Plaintiff's dispute, and the publicly recorded Bankruptcy Case filings.

133.   As a result of Equifax's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Plaintiff has suffered actual damages as described herein. Plaintiff is, therefore, entitled to recover actual damages from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

134.   Equifax's actions and omissions were willful, rendering Equifax liable to Plaintiff for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

135.   Plaintiff is entitled to recover costs and attorneys' fees from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. §§ 1681e(b) and 1681i –Trans Union, LLC

136.   Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

137.   Pursuant to 15 U.S.C. § 1681e(b), TransUnion is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

138.   TransUnion's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

139.   Pursuant to 15 U.S.C. § 1681i(a)(1)(A), TransUnion had an affirmative duty to independently investigate the dispute submitted by Plaintiff.

140.   Pursuant to 15 U.S.C. § 1681i(a)(2), TransUnion was required to communicate the specifics of Plaintiff's dispute to DiTech, including the forwarding of any documents provided by Plaintiff in support of that dispute.

141.   A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the

substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

142.   In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), TransUnion was required to review and consider all relevant information submitted by Plaintiff.

143.   Plaintiff's dispute was clear and unambiguous as to the inaccuracies of TransUnion's reporting.

144.   Plaintiff provided all the relevant information necessary for TransUnion to reinvestigate and correct the inaccuracies in its reporting.

145.   TransUnion breached its duties as described herein.

146.   If TransUnion had conducted a reasonable reinvestigation of Plaintiff's dispute, TransUnion would have reviewed and considered all of the information Plaintiff submitted in her dispute letter and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

147.   If TransUnion had conducted a reasonable reinvestigation of Plaintiff's dispute, the tradeline on Plaintiff's TransUnion consumer report would have been appropriately corrected.

34

148.   Due to TransUnion's failures to follow reasonable procedures to assure maximum possible accuracy of information and failures to conduct a reasonable reinvestigation of Plaintiff's dispute, the false and misleading information in Plaintiff's credit file and on Plaintiff's TransUnion report was not appropriately modified.

149.   TransUnion had all the information necessary to correct its reporting. Yet, TransUnion failed to correct the information in the face of clear evidence that its reporting was false and misleading. The failure indicates that TransUnion's review procedures were not reasonable.

150.   The fact that TransUnion had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that TransUnion recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

151.   TransUnion willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Plaintiff in her consumer reports, in reckless disregard of the statutory requirements, Plaintiff's dispute, and the publicly recorded Bankruptcy Case filings.

35

152.   TransUnion willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Plaintiff's dispute, and by failing thereafter to appropriately modify information in her file and on her consumer report in reckless disregard of the statutory requirements, Plaintiff's dispute, and the publicly recorded Bankruptcy Case filings.

153.   As a result of TransUnion's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Plaintiff has suffered actual damages as described herein. Plaintiff is, therefore, entitled to recover actual damages from TransUnion pursuant to 15 U.S.C. §§ 1681n and 1681o.

154.   TransUnion's actions and omissions were willful, rendering TransUnion liable to Plaintiff for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

155.   Plaintiff is entitled to recover costs and attorneys' fees from TransUnion pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b) – DiTech Financial, LLC

156.   Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

157.   Pursuant to 15 U.S.C. § 1681s-2(a), DiTech is responsible for providing accurate information whenever it furnishes information to any consumer reporting agencies.

158.   Upon information and belief, Equifax timely notified DiTech of Plaintiff's disputes and provided DiTech with all the relevant information that Plaintiff had submitted.

159.   Pursuant to 15 U.S.C. § 1681s-2(b), DiTech had a duty to investigate Plaintiff's dispute and accurately report its findings to Equifax.

160.   A furnisher's investigation must be a good faith effort to ascertain the truth; a reasonable investigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

161.   In order to conduct a reasonable investigation, and pursuant to 15 U.S.C. § 1681s-2(b), DiTech was required to review and consider all relevant information submitted by Plaintiff to Equifax.

162.   Plaintiff's disputes were clear and unambiguous as to the inaccuracies of reporting the Mortgage as having a $0 balance.

163.   DiTech breached its duties as described herein.

164.   If DiTech had conducted a reasonable investigation of Plaintiff's dispute, DiTech would have reviewed and considered all of the information Plaintiff submitted to Equifax in her dispute and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

165.   If DiTech had conducted a reasonable investigation of Plaintiff's dispute, the tradeline on Plaintiff's consumer reports would have been corrected accordingly.

166.   Due to DiTech's failures to provide accurate information, and failures to conduct reasonable investigations of Plaintiff's dispute, the false and misleading information in Plaintiff's credit file and on Plaintiff's reports as described herein was not appropriately modified.

167. DiTech had all the information necessary to correct its reporting. Yet, DiTech failed to suitably correct its reporting in the face of clear evidence that it was false and misleading. The failure indicates that DiTech's review procedures were not reasonable.

168. The fact that DiTech had all the information necessary to correct its reporting, yet failed to appropriately do so, further indicates that DiTech recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

169. DiTech willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Plaintiff's disputes from Equifax; by failing to appropriately report the results of its investigation; and by failing to appropriately modify the disputed information, in reckless disregard of the statutory requirements; Plaintiff's disputes, and the publicly recorded Bankruptcy Case filings.

170. As a result of DiTech's violations of 15 U.S.C. § 1681s-2(b), Plaintiff has suffered actual damages as stated herein. Plaintiff is, therefore, entitled to recover actual damages from DiTech under 15 U.S.C. §§ 1681n and 1681o.

171.   DiTech's actions and omissions were willful, rendering DiTech liable to Plaintiff for punitive damages and/or statutory damages, pursuant to 15 U.S.C. § 1681n.

172.   Plaintiff is entitled to recover costs and attorneys' fees from DiTech, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT IV

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b) – DiTech Financial, LLC

173.   Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

174.   Pursuant to 15 U.S.C. § 1681s-2(a), DiTech is responsible for providing accurate information whenever it furnishes information to any consumer reporting agencies.

175.   Upon information and belief, TransUnion timely notified DiTech of Plaintiff's disputes and provided DiTech with all the relevant information that Plaintiff had submitted.

176.   Pursuant to 15 U.S.C. § 1681s-2(b), DiTech had a duty to investigate Plaintiff's dispute and accurately report its findings to TransUnion.

177.   A furnisher's investigation must be a good faith effort to ascertain the truth; a reasonable investigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

178.   In order to conduct a reasonable investigation, and pursuant to 15 U.S.C. § 1681s-2(b), DiTech was required to review and consider all relevant information submitted by Plaintiff to TransUnion.

179.   Plaintiff's disputes were clear and unambiguous as to the inaccuracies of reporting the Mortgage as having a $0 balance.

180.   DiTech breached its duties as described herein.

181.   If DiTech had conducted a reasonable investigation of Plaintiff's dispute, DiTech would have reviewed and considered all of the information Plaintiff submitted to TransUnion in her dispute and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

182.   If DiTech had conducted a reasonable investigation of Plaintiff's dispute, the tradeline on Plaintiff's consumer reports would have been corrected accordingly.

183.   Due to DiTech's failures to provide accurate information, and failures to conduct reasonable investigations of Plaintiff's dispute, the false and misleading

41

information in Plaintiff's credit file and on Plaintiff's reports as described herein was not appropriately modified.

184.   DiTech had all the information necessary to correct its reporting. Yet, DiTech failed to suitably correct its reporting in the face of clear evidence that it was false and misleading. The failure indicates that DiTech's review procedures were not reasonable.

185.   The fact that DiTech had all the information necessary to correct its reporting, yet failed to appropriately do so, further indicates that DiTech recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

186.   DiTech willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Plaintiff's disputes from TransUnion; by failing to appropriately report the results of its investigation; and by failing to appropriately modify the disputed information, in reckless disregard of the statutory requirements; Plaintiff's disputes, and the publicly recorded Bankruptcy Case filings.

187.   As a result of DiTech's violations of 15 U.S.C. § 1681s-2(b), Plaintiff has suffered actual damages as stated herein. Plaintiff is, therefore, entitled to recover actual damages from DiTech under 15 U.S.C. §§ 1681n and 1681o.

188.   DiTech's actions and omissions were willful, rendering DiTech liable to Plaintiff for punitive damages and/or statutory damages, pursuant to 15 U.S.C. § 1681n.

189.   Plaintiff is entitled to recover costs and attorneys' fees from DiTech, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **TRIAL BY JURY**

190.   Plaintiff is entitled to and hereby requests a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered in her favor and against Defendants, jointly and severally, for:

a.)  Plaintiff's actual damages;

b.)  Punitive and/or statutory damages, pursuant to 15 U.S.C. § 1681n;

c.)  Reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and/or 1681o; and

d.)  Such other and further relief as may be just and proper.

43

Respectfully submitted this 5th day of September, 2017.

**BERRY & ASSOCIATES**

*/s/ Paul J. Sieg*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
Paul J. Sieg
Georgia Bar No.: 334182
*psieg@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3334
Fax (404) 235-3333

*Plaintiff's Attorneys*

44